Opinion issued December 9, 2004










     



In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00637-CV




RICHARD CHOUCROUN, INDIVIDUALLY AND D/B/A RICHARD’S
ANTIQUITIES, Appellant

V.

SOL L. WISENBERG INSURANCE AGENCY-LIFE & HEALTH
DIVISION, INC. d/b/a WISENBERG INSURANCE + RISK
MANAGEMENT FINANCIAL SERVICES DIVISION, Appellee




On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2002-17950




MEMORANDUM OPINION
          This is an appeal from a summary judgment rendered in favor of appellee, Sol
L. Wisenberg Insurance Agency-Life & Health Division, Inc. d/b/a Wisenberg
Insurance + Risk Management Financial Services Division (“WIA”). On appeal, we
consider whether the trial court erred by (1) permitting WIA to file its motion for
summary judgment after the deadline set forth in the court’s scheduling order for the
filing of dispositive motions had passed; (2) granting WIA’s motion for summary
judgment; and (3) denying the motion for summary judgment filed by plaintiff,
Richard Choucroun d/b/a Richard’s Antiquities (“Choucroun”) on the counterclaims
filed by Wisenberg Insurance Agency. We affirm.
BACKGROUND
          Choucrouns’s business, Richard’s Antiquities, was covered by an insurance
policy issue by First Specialty Insurance Corporation (“First Specialty”), which
Choucroun procured through WIA. The policy excluded coverage for “flooding and
rising water.” In June 2001, Tropical Storm Allison deluged downtown Houston,
Texas, and Richard’s Antiquities suffered extensive water damage to its contents. 
Choucroun filed a claim with First Specialty, which was ultimately denied based on
the recommendation of an independent adjuster, Ward North America, Inc. (Ward).



          On April 9, 2002, Choucroun filed suit against First Specialty (the insurer),
Ward (the independent adjuster), and WIA (the insurance agency that procured the
policy for Choucroun). Choucroun’s petition asserted claims for breach of contract,
violations of the Deceptive Trade Practices Act, negligence, and breach of fiduciary
duty. Choucroun settled with First Specialty and Ward and proceeded with its claims
against WIA.
          On September 26, 2002, WIA counterclaimed against Choucroun, seeking
attorney’s fees under Rule 13 of the Texas Rules of Civil Procedure, Chapter 10 of
the Texas Civil Practices and Remedies Code, and Section 17.50(c) of the DTPA. 
Choucroun filed a motion for summary judgment on the counterclaims, which the trial
court denied on December 9, 2002.
          On January 6, 2003, after the deadline for dispositive motions had passed, WIA
filed a motion for leave to file a motion for summary judgment, and,
contemporaneously therewith, filed a traditional motion for summary judgment. The
motion for summary judgment asserted “the election of remedies” doctrine as a
defense, and also sought to disprove at least one element of each cause of action
asserted by Choucroun.
          On April 23, 2003, the trial court granted the summary judgment “on all issues
except the election of remedies doctrine” defense. On May 21, 2003, WIA nonsuited
its counterclaims against Choucroun, thus rendering the interlocutory summary
judgment final. This appeal followed.
LATE-FILED MOTION FOR SUMMARY JUDGMENT
          Choucroun contends that the trial court erred by allowing WIA to file a motion
for summary judgment on January 6, 2003, even though the trial court’s docket
control order mandated that all dispositive motions be set for a hearing by November
4, 2002. We disagree. The trial court has the inherent right to change or modify its
docket control order. See Ocean Transp., Inc. v. Greycas, Inc., 878 S.W.2d 256, 262
(Tex. App.—Corpus Christi 1994, writ denied).
          Accordingly, the trial court did not err by permitting WIA to file its motion for
summary judgment after the deadline for doing so had passed.
DEFENDANT’S MOTION FOR SUMMARY JUDGMENT GRANTED
          In its motion for summary judgment, WIA alleged that, under the “election of
remedies” doctrine,” Choucroun could not pursue its claims against WIA because of
his settlement with First Specialty. WIA also alleged that Choucroun (1) could not
maintain a breach of contract cause of action because there was no contract between
WIA and Choucroun; (2) could not maintain a negligence cause of action because
WIA did not have a duty to disclose policy limitations to Choucroun; (3) could not
maintain a bad faith claim against WIA because First Specialty, the insurer, was the
party with a “special relationship” to Choucroun, not WIA; (4) could not maintain a
claim for the violation of section 21.21 of the Texas Insurance Code because WIA
was not an insurer; (5) could not maintain a DTPA cause of action because no one at
WIA made an actionable misrepresentation to Choucroun; (6) could not maintain a
fraud cause of action because, again, no actionable misrepresentation was made by
anyone at WIA.
          The trial court granted WIA’s motion for summary judgment on all grounds
except the election of remedies defense.
A. Standard of Review
          To succeed in a traditional motion for summary judgment under rule 166a(c)
of the Rules of Civil Procedure, a movant must establish that there is no genuine issue
of material fact so that the movant is entitled to judgment as a matter of law. Tex. R.
Civ. P. 166a(c). In deciding whether there is a disputed issue of material fact, every
doubt must be resolved in favor of the nonmovant and evidence favorable to the
nonmovant must be taken as true. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.1995);
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant is
entitled to summary judgment if the summary judgment evidence establishes, as a
matter of law, that at least one element of a plaintiff’s cause of action cannot be
established. Elliott-Williams Co. v. Diaz, 9 S.W.3d 801, 803 (Tex. 1999). Once the
defendant produces sufficient evidence to establish the right to summary judgment,
the burden shifts to the plaintiff to come forward with competent controverting
evidence raising a genuine issue of material fact with regard to the element
challenged by the defendant. Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197
(Tex. 1995). 
          The supreme court has made it clear that the nonmovant in a summary
judgment situation “must expressly present to the trial court, by written answer or
response, any issues defeating the movant’s entitlement.” McConnell v. Southside
Sch. Dist., 858 S.W.2d 337, 343 (Tex. 1993). The response must fairly apprise the
movant and the court regarding issues the nonmovant believes should defeat the
motion. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.
1979). Further, the rules of civil procedure provide that “[i]ssues not expressly
presented to the trial court by written motion answer or other response should not be
considered on appeal as grounds for reversal.” Tex. R. Civ. P. 116a(c). The
non-movant’s failure to raise issues in a proper response cannot, however, supply by
default the proof necessary to establish the movant’s right to summary judgment. 
McConnell, 858 S.W.2d at 343. The movant’s summary judgment must still stand or
fall on its own merit. Id.
B. Sufficiency of Choucroun’s Response
          Choucroun responded to the motion for summary judgment by filing a response
alleging that (1) WIA’s motion for summary judgment was untimely, and (2) that
“there are all of the numerous genuine issues of material fact raised by admissible
summary judgment evidence . . .” To his response, Choucroun attached his own
deposition testimony excerpts and errata sheet; his own affidavit, and copies of the
insurance policy at issue in the case. However, nowhere in his response to the motion
for summary judgment did he explain how the “admissible summary judgment
evidence” raised a fact issue in the case. A conclusory statement that there are
material issues of fact in dispute, without more, is insufficient to defeat a motion for
summary judgment. See McDonald v. Foster Mortgage Corp., 834 S.W.2d 573, 576
(Tex. App.—Houston [14th Dist.] 1992 , writ denied) (holding that general statement
that the pleadings and attorney’s attached affidavit show disputed issues of material
fact was insufficient to raise question of fact); Sipes v. Petry and Stewart, 812 S.W.2d
428, 430 (Tex. App.—San Antonio 1991, no writ) (stating that party “may not rest
on mere allegation . . . but must set forth specific facts showing there is a genuine
issue for trial”). Choucroun also filed a memorandum of law in opposition to
defendants’ motion for summary judgment, in which he alleged that there were
genuine issues of material fact as to most of the causes of actions plead. However,
the memorandum of law did not state what the “genuine issues of material fact” were.
          Because Choucroun’s response to the motion for summary judgment is
insufficient to raise a fact issue, we examine WIA’s motion and proof and determine
whether it has shown entitlement to summary judgment as a matter of law.
C. Breach of Contract
          In his petition, Choucroun alleged that WIA breached a contract with him. 
Specifically, Choucroun alleged that WIA “had at all time material herein contracts
to provide insurance coverages for Plaintiffs’ inventory of antiques,” and that WIA
“failed to obtain coverages for Plaintiffs for their contents and inventory that [WIA]
had represented that such policy of insurance had but in fact did not.”
          The essential elements of a breach of contract action are: (1) the existence of
a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach
of the contract by the defendant; and (4) damages sustained by the plaintiff as a result
of the breach. Valero Mktg. & Supply Co. v. Kalama Int’l, L.L.C., 51 S.W.3d 345,
351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).
          WIA moved for summary judgment on Choucroun’s breach of contract claim
by alleging that there was no fact question on the first element of a breach of contract
case. Specifically, WIA contended that there was no enforceable contract between
WIA and Choucroun, and that the only contract in this case was the insurance
contract between Choucroun and First Specialty. The insurance contract, which is
attached as summary judgment proof, shows that WIA was not a party to the
insurance contract. There is no evidence of any other contract between WIA and
Choucroun. Thus, WIA carried its burden of showing that there was no contract
between itself and Choucroun, and summary judgment was properly granted on this
ground.
D. Negligence
          In his petition, Choucroun alleged that WIA was negligent in the following
respects:
(1) failing to cover and insure [Choucroun’s] inventory and contents as
represented to [Choucroun] for the many years of their coverage
including May 26, 2001-May 26, 2002 and/or
 
(2) not advising [Choucroun] either that such additional coverages were
available at extra costs and the cost, or that they were not available at
all, that [Choucroun] could go bare and self insure such potential losses,
and/or
 
(3) [WIA was] fraudulent and negligent in doing what they did here and
representing that [Choucroun] had such coverages including for the
above material time period when if fact they, [WIA] know or should
have know [sic] that [Choucroun] didn’t have such insurance coverages
for foreseeable and foreseen heavy rain weather, events and occurrences
such as [Tropical Storm] Allison; [WIA] is liable here for both actual
and punitive damages. 

          Specifically, Choucroun’s negligence claim is based on the allegation that WIA
had a duty to inform Choucroun that damages to the contents of the building caused
by rain were not covered unless a covered loss led to the damage of the building. 
WIA’s motion for summary judgment alleged that it owed no duty to explain the
terms of the insurance policy to Choucroun or to advise him on other, alternative
policy coverages.
          In Critchfield v. Smith, the court described the duty that an insurance agent
owes its client as follows:
In Texas, an insurance agent owes the following common-law duties to
a client when procuring insurance: 1) to use reasonable diligence in
attempting to place the requested insurance, and 2) to inform the client
promptly if unable to do so. Moore v. Whitney-Vaky Ins. Agency, 966
S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no pet.) (citing May
v. United Servs.Ass’n of America, 844 S.W.2d 666, 669 (Tex.1992)). 
No legal duty exists on the part of an insurance agent to extend the
insurance protection of his customer merely because the agent has
knowledge of the need for additional insurance of that customer,
especially in the absence of evidence of prior dealings where the agent
customarily has taken care of his customer’s needs without consulting
him. Pickens v. Texas Farm Bureau Ins. Cos., 836 S.W.2d 803, 805
(Tex. App.—Amarillo 1992, no writ) (citing McCall v. Marshall, 398
S.W.2d 106, 109 (Tex.1965)).

Critchfield, 2004 WL 948642, slip op. at 3, (Tex. App.—Tyler April 30, 2004, pet.
denied). 
          In Moore v. Whitney-Vaky Ins. Agency, the insured filed a negligence claim
against his agent, alleging that the agent led him to believe that all liabilities were
covered under the policy. 966 S.W.2d 690, 692 (Tex. App.—San Antonio 1998, no
pet). However, the plaintiff admitted that the agent never discussed the contents of
the policy with him or said anything to give him the impression that the policy would
cover all lawsuits against him. Id. The court noted that, although affirmative
misrepresentations might be actionable, there was no duty on the part of the agent to
disclose policy coverage limitations. Id.
          In this case, WIA attached Choucroun’s deposition testimony as summary
judgment proof. In his deposition, Choucroun testified several times that no one at
WIA misrepresented to him that the contents of his building would be covered under
the circumstances that transpired.
[Defense counsel]: I understand. I’m trying to understand the reason for
your impression. The impression you have that your property would be
covered for this kind of occurrence is based upon your mind and your
reading of the policy. Right?
 
[Choucroun]: Yes, sir.
 
[Defense counsel]: Not based upon something the insurance company
said, is it?
 
[Choucroun]: I don’t–
 
[Defense counsel]: It’s not based on anything Wisenberg said, is it?
 
[Choucroun]: I don’t know what they—I don’t know. I don’t know what
to say.
 
****
 
[Choucroun]: I don’t know. I mean, you asked me a question. I don’t
know the answer. I’m answering something because you are pushing me
to say something I don’t know. I don’t know what the insurance
company told me. I know that in my mind, I paid for liability and
property, commercial property, and then I think I’m insured for that. 
That’s what I know. I mean, you ask me what’s in the conversation. I
don’t know what was in the conversation.
 
****
 
[Defense counsel]: All I’m trying to understand, sir, is did you have a
conversation with anybody at the Wisenberg agency where they said if
a big storm comes in and put down 37 inches of rain, and the ceiling
falls in, and the rain comes in your building, it’s going to cover your
contents? You didn’t have that conversation.
 
[Choucroun]: No, sir, I don’t remember that–
 
****
 
[Defense counsel]: Okay. You don’t recall any specific conversations
with anybody at the Wisenberg agency about exceptions and exclusions?
 
[Choucroun]: I do not remember any, no, sir.
 
****
 
[Defense counsel]: Let me ask you this, sir, [a]re you aware of any time
that anybody at the Wisenberg agency ever lied to you?
 
[Choucroun]: No, sir.
 
[Defense counsel]: Have they ever said anything to you that you thought
was misleading?
 
[Choucroun]: No, sir.
 
[Defense counsel]: Have they ever said anything to you that you thought
was deceptive?
 
[Choucroun]: No, sir. Always have faith in Wisenberg Insurance
Agency. Done business with them for many years, and I didn’t –
 
[Defense counsel]: Okay.
 
[Choucroun]: If I had, then I would not have done business with them.
 
[Defense counsel]: And other than the disagreement you have with the
carrier about whether the coverage applies, you don’t think anybody for
the carrier or ever Ward lied to you or said anything false or misleading
or false or deceptive.
 
[Choucroun]: No, I’m not saying that. I’m not saying anybody lied to
me maliciously or anything like that.
 
[Defense counsel]: Okay. It was just an honest disagreement about
whether it’s covered or not.
 
[Choucroun]: Yeah.
          Like the plaintiff in Moore, Choucroun was never “led wrongly to believe that
[his] policy provided protection against a particular risk that was in fact excluded
from the policy’s coverage.” See Moore, 966 S.W.2d at 692 (quoting May v. United
Servs. Ass’n of America, 844 S.W.3d 666, 669-70 (Tex. 1992)). Likewise, WIA had
no duty to disclose the policy coverage limitations with Choucroun. See Moore, 966
S.W.2d at 692. Similarly, there was no evidence that WIA had customarily taken care
of Choucroun’s insurance needs without first consulting him. See Pickens v. Tex.
Farm Bureau Ins. Cos., 836 S.W.2d 803, 805 (Tex. App.—Amarillo, no pet).
          The fact that the policy did not automatically cover the contents of his building
in the event of rain damage, as Choucroun believed it would, is no evidence that WIA
breached its duties to Choucroun. “[I]f a breach of due care can be proved without
a more concrete showing than a subsequent failure of coverage, agents would be
rendered ‘blanket insurers.’” May, 844 S.W.2d at 671. As such, the trial court
properly concluded that WIA carried its burden of proving that it had not negligently
breached the common-law duties it owed Choucroun. 
E. Insurance Code & DTPA Claims
          Choucroun also alleged claims under section 21.21 of the Texas Insurance
Code and Section 17.46 of the Texas Deceptive Trade Practices Act. See Tex. Ins.
Code Ann. art. 21.21, § (Vernon 2004); Tex. Bus. & Com. Code Ann. § 17.46
(Vernon 2002).
          Again, we find Moore v. Whitney-Vaky Ins. Agency instructive. 966 S.W.2d
at 692, 693. In Moore, the plaintiff brought DTPA and Insurance Code claims against
his insurance agent because the agent led him to believe that all liabilities were
covered by the policy, and they were not. Id. at 691. However, the plaintiff admitted
that the agent never discussed the contents of the policy with him. Id. The court held
that, in the absence of a specific misrepresentation by the agent, these claims were not
actionable. Id. at 692.
“In the absence of some specific misrepresentation by the insurer or
agent about the insurance, a policyholder’s mistaken belief about the
scope or availability of coverage is not generally actionable under the
DTPA.” Sledge v. Mullin, 927 S.W.2d 89, 94 (Tex. App.—Fort Worth
1996, no writ). For the same reason, a claim based solely on mistaken
belief would fail under the Insurance Code. See id.

Moore, 966 S.W.2d at 692-93.

          As we have already discussed, WIA’s summary judgment proof shows that no
one at WIA said anything misleading about the policy to Choucroun. Choucroun’s
mistaken belief that the policy would cover the contents of his building under the
circumstances presented does not render WIA’s conduct actionable under either the
DTPA or the Insurance Code.
          Accordingly, the trial court properly granted summary judgment on these
claims.
F. Fraud
          Choucroun’s petition also alleged that WIA “fraudulently represented to
Plaintiffs that their inventory was insured and his location in its condition above for
“‘all risks’ except for flood or rising water and employee theft . . . .” To prove a fraud
claim, a plaintiff must show that (1) the defendant made a representation to the
plaintiff; (2) the representation was material; (3) the representation was false; (4)
when the defendant made the representation, it knew the representation was false or
made the representation recklessly, as a positive assertion, and without knowledge of
its truth; (5) the defendant made the representation with the intent that the plaintiff
act on it; (6) the plaintiff relied on the representation; and (7) the representation
caused the plaintiff injury. Ins. Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex.
1998).
          WIA moved for summary judgment on Choucroun’s fraud claim by attacking
the first three elements of a fraud claim, i.e., WIA alleged that it did not make a
material misrepresentation to Choucroun. In support, WIA attached the deposition
testimony quoted above, wherein Choucroun admitted that no one at WIA had lied
or made a misrepresentation to him. As such, WIA carried its burden of defeating an
element of Choucroun’s fraud claim.
          Accordingly, the trial court did not err in granting summary judgment on
Choucroun’s fraud claim.
G. Breach of Fiduciary Duty
          In his petition, Choucroun alleged that “[a]s Plaintiffs’ longstanding insurance
agent, [WIA] had duties of trust and loyalty to Plaintiffs by [WIA]; they had a special
relationship and fiduciary duties to Plaintiffs . . . .” In its motion for summary
judgment, WIA contended that it had no “special relationship” with Choucroun
giving rise to a duty of good faith and fair dealing. We agree for two reasons.
          First, an insurance carrier owes its insured the duty of good faith and fair
dealing because the contract between them is the result of unequal bargaining power
and, by its nature, allows unscrupulous insurers to take advantage of their insured. 
See Natividad v. Alexis, 875 S.W. 2d 695, 698 (Tex. 1994). However, the “special
relationship” created does not extend to those who are not parties to the insurance
contract. Id.
          Second, there is no evidence in this case of a contract giving rise to a special
relationship. Even though WIA was Choucroun’s “long-standing insurance agent,” 
there is no evidence in the record to warrant the extension of WIA’s duties beyond
that of any other insurance agent. 
          In Moore, the plaintiff urged the court to extend his agent’s liability beyond
affirmative misrepresentations to the failure to disclose policy limitations. The court
noted that, even if it were to extend the common-law duties of an agent beyond
affirmative misrepresentations, it would not do so in that case because there was no
evidence of any special relationship between Moore and his agent. 966 S.W.2d at 692. 
Specifically, the court noted that Moore could not recall discussing the contents of the
policy with the agent and had merely renewed the policy year-to-year. Id.
          The same is true in this case. In his deposition, Choucroun testified as follows:
[Defense counsel]: And do you remember ever calling the Wisenberg
agency to ask any questions about your policy?
 
[Choucroun]: I think I have. I don’t know the exact wording or the
nature of the call. But I called, yes. I called Wisenberg Insurance and
discuss [sic] with whoever it was at that time about the policy And they
will call me and say the policy is coming to be renewed. You know, you
have till what date would you like. We have this policy, and we’ll go
from there.
 
[Defense counsel]: Okay. So they would call you to talk about how
much it was going to cost.
 
[Choucroun]: Yes.
 
[Defense counsel]: And whether you wanted to pay cash or whether you
want to pay it every month.
 
[Choucroun]: Right.
 
[Defense counsel] : . . .and how much insurance you’re going to have.
 
[Choucroun]: Right.
 
[Defense counsel]: But my question is—I didn’t ask it very well. What
I intended to ask you was, during any of these years before the storm, did
you ever call Wisenberg up and say, “I’ve read this policy, and I don’t
understand it?”
 
[Choucroun]: Sir, I have not. I don’t remember that.
 
[Defense counsel]: Did you ever call them up and say, “Hey, this doesn’t
cover what I thought it covered.”
 
[Choucroun]: I don’t remember that, no, sir.
 
          Like the plaintiff in Moore, Choucroun may have had a long-standing
relationship with WIA, but there is nothing to show that WIA undertook any duties
over and above those of any insurance agent, i.e., the record does not show a special
relationship or undertaking by WIA.



          As such, the trial court properly granted summary judgment on Choucroun’s
breach of fiduciary duty claims.
PLAINTIFF’S MOTION FOR SUMMARY JUDGMENT DENIED
          Choucroun contends that the trial court erred by denying his motion for
summary judgment on WIA’s counterclaim for attorney’s fees. However, the record
shows that WIA nonsuited its counterclaim and did not obtain a judgment awarding
it attorney’s fees. Therefore, the denial of plaintiff’s motion for summary judgment
is moot.
CONCLUSION
          We affirm the judgment of the trial court.
 
 
                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.